**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

**KATIE M. MOSLEY,**

      **Plaintiff,**

**vs.**                            **Case No. 1:14cv53-MP/CAS**

**CAROLYN W. COLVIN,
Acting Commissioner of Social Security,**

      **Defendant.**

_____/

## REPORT AND RECOMMENDATION

This is a Social Security case referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.2(D).   It is now before the Court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Commissioner of the Social Security Administration (SSA) denying Plaintiff's Title II application for period of disability and Disability Insurance Benefits (DIB) and Title XVI application for Supplemental Security Income (SSI) .   After careful consideration of the entire record, it is respectfully recommended that the decision of the Commissioner be affirmed.

**I.  Procedural History**

On March 29, 2011, Plaintiff, Katie M. Mosley, applied for DIB and SSI benefits with an alleged onset date of April 15, 2009, claiming that medical issues related to her asthma, arthritis, diabetes, hip, back, knees, and hands limited her ability to work.

R. 13, 58, 196-207, 224.   (Citations to the record shall be by the symbol "R". followed by a page number that appears in the lower right corner.)

Plaintiff's claims were denied initially on June 9, 2011, and upon reconsideration on August 25, 2011.   R. 13, 97-102, 121-30.   On October 6, 2011, Plaintiff requested a hearing.   R. 13, 131-32.   On September 20, 2012, Administrative Law Judge (ALJ) Robert Droker conducted an evidentiary (video) hearing.   R. 13, 28-50.   Plaintiff appeared in Gainesville, Florida, and the ALJ presided over the hearing from Jacksonville, Florida.   *Id.*   Plaintiff was represented by Maria K. Georgiou, an attorney. R. 13, 103-05, 193-95.   Plaintiff testified.   R. 31-45.   A. Mark Capps testified as an impartial vocational expert.   R. 13, 45-48, 190-91 (Resume).

On October 26, 2012, the ALJ entered his decision concluding that Plaintiff is not disabled.   R. 13-23.   On November 20, 2012, Plaintiff filed a request for review of the ALJ's decision and also filed a brief.   R. 8-9, 277-84 (Exhibit 15E).   On February 10, 2014, the Appeals Council denied Plaintiff's request for review, which also included consideration of Plaintiff's brief.   R. 1-6.   The ALJ's decision stands as the final decision of the Commissioner.

On April 5, 2014, Plaintiff filed a complaint requesting judicial review of the Commissioner's final decision.   Doc. 1.   Both parties filed memoranda of law, docs. 11 and 12, which have been considered.

## II.  Findings of the ALJ

The ALJ made several findings relative to the issues raised in this appeal:

1.  Plaintiff "meet the insured status requirements of the Social Security Act through December 31, 2010."   R. 15.

2.  Plaintiff "has not engaged in substantial gainful activity [SGA] since April 15, 2009, the alleged onset date."   *Id.*

3.  Plaintiff has several "severe impairments: diabetes mellitus, arthritis, disorders of the spine, disorders of the hips, disorders of the knees, hypertension, asthma and obesity."   *Id.*   The ALJ also considered her vision issues related to diabetes.   R. 15-16.

4.  Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."   R. 16.   The ALJ noted: "Neither the claimant nor her representative attorney has identified findings establishing that the claimant has met or equaled any listed impairment. . . . Furthermore, no treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment."   *Id.*

5.  "[T]he claimant has the residual functional capacity [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except further limited by the following exertional limitations: needs a sit/stand option (needs to be able to perform work sitting or standing at the employee's option); needs to avoid ladders or unprotected heights; needs to [avoid] operation of heavy, moving machinery; needs to avoid concentrated dusts, fumes or gases; can only occasionally bend, crouch, stoop or crawl; avoid kneeling or squatting; needs to avoid the push/pull of arm control and needs to avoid the operation of foot controls."   R. 16.

6.  Plaintiff "is unable to perform any past relevant work" as a hotel maid and dining room attendant that are light exertion and have an SVP of 2, unskilled. R. 21.

7.  "The claimant has a limited education and is able to communicate in English."   *Id.*   Plaintiff was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.   *Id.*

8.  "Considering the claimant's age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant can perform" such as an assembler, small parts and ticket taker, which are light exertion and unskilled with an SVP of 2, and table worker and addresser, which are sedentary exertion and unskilled with an SVP of 2. R. 21-22.

9.  "The claimant has not been under a disability, as defined in the Social Security Act, from April 15, 2009, through the date of this decision "   R. 22.

## III.   Legal Standards Guiding Judicial Review

This Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles. 42 U.S.C. § 405(g); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).   "Substantial evidence is more than a scintilla, but less than a preponderance.   It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); *accord* Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).   "The Commissioner's factual findings are conclusive if supported by substantial evidence."   Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002) (citations omitted).[1]

"In making an initial determination of disability, the examiner must consider four factors: '(1) objective medical facts or clinical findings; (2) diagnosis of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant and corroborated by [other observers, including family members], and (4) the claimant's

---

[1]   "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it."   Phillips v. Barnhart, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted).   "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ.   A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ."   Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983).   "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'"   Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

age, education, and work history.'" Bloodsworth, 703 F.2d at 1240 (citations omitted).

A disability is defined as a physical or mental impairment of such severity that the

claimant is not only unable to do past relevant work, "but cannot, considering his age,

education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).   A disability is an

"inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than 12

months." 42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. §§ 404.1509, 416.909 (duration

requirement).[2]   Both the "impairment" and the "inability" must be expected to last not less

than 12 months.   Barnhart v. Walton, 535 U.S. 212 (2002).   In addition, an individual is

entitled to DIB if she is under a disability prior to the expiration of her insured status.   *See*

42 U.S.C. § 423(a)(1)(A); Moore v. Barnhart, 405 F.3d at 1211; Torres v. Sec'y of Health

& Human Servs., 845 F.2d 1136, 1137-38 (1st Cir. 1988); Cruz Rivera v. Sec'y of Health

& Human Servs., 818 F.2d 96, 97 (1st Cir. 1986).

The Commissioner analyzes a claim in five steps.   20 C.F.R.

§ 404.1520(a)(4)(i)-(v):

1. Is the individual currently engaged in substantial gainful activity [SGA]?

2. Does the individual have any severe impairments?

---

[2]   The relevant DIB and SSI regulations are virtually identical.   As a result, citations will be made to the DIB regulations found at 20 C.F.R. §§ 404.1500-404.1599, unless a SSI regulation provides otherwise.   The parallel regulations are found at 20 C.F.R. §§ 416.900-416.999, corresponding to the last two digits of the DIB citations, e.g., 20 C.F.R. § 404.1563(c) corresponds to 20 C.F.R. § 416.963(c).

3.  Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

4.  Does the individual have the RFC to perform work despite limitations and are there any impairments which prevent past relevant work?[3]

5.  Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits.   A positive finding at step three results in approval of the application for benefits.   At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work.   Consideration is given to the assessment of the claimant's RFC and the claimant's past relevant work. If the claimant can still do past relevant work, there will be a finding that the claimant is not disabled.   If the claimant carries this burden, however, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy in light of the claimant's RFC, age, education, and work experience.   Phillips, 357 F.3d at 1237; Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986); 20 C.F.R.

---

[3]   A residual functional capacity (RFC) is the most a claimant can still do despite limitations.   20 C.F.R. § 404.1545(a)(1).   It is an assessment based upon all of the relevant evidence including the claimant's description of her limitations, observations by treating and examining physicians or other persons, and medical records.   *Id.*   The responsibility for determining claimant's RFC lies with the ALJ.   20 C.F.R. § 404.1546(c).

§ 404.1520(a)(4)(v).   If the Commissioner carries this burden, the claimant must prove

that he or she cannot perform the work suggested by the Commissioner.   Hale v. Bowen,

831 F.2d 1007, 1011 (11th Cir. 1987).

## IV.   Legal Analysis

**Substantial evidence supports the ALJ's determination that Plaintiff is not disabled and not entitled to a remand to more fully develop the record.**

1.

Plaintiff does not disagree with the factual findings derived from the medical and

other evidence submitted to the ALJ during the evidentiary hearing.   Doc. 11.   In fact,

Plaintiff incorporates the ALJ's entire decision in her memorandum of law.   *See* Doc.

11 at 4-17.   Plaintiff refers to a portion of her hearing testimony when she testified that

she finished the eighth grade and dropped out; never had any subsequent training or

education or received a GED; she is 4'8" tall and weighs 200 pounds; never had a driver

license; and would have a problem counting change if given a 20 dollar bill.   R. 18-19;

*see* R. 38.   Plaintiff also referred to an earnings report that showed Plaintiff "never

worked at one Substantial Gainful Activity Level [R. 209]."   Doc. 11 at 19.

Plaintiff contends that the ALJ committed reversible error because he did not

fully and fairly develop the record regarding the record's lack of Plaintiff's IQ score in

light of Plaintiff's eight grade education, lack of a GED, failure to earn at a SGA level,

and her inability to make change.   Doc. 11 at 20-25.   Plaintiff requests a remand with

directions that the ALJ refer Plaintiff for IQ testing so that it can be determined whether

her IQ is 70 or less which in turn would show that she meets a listed impairment, Listing

12.05C.   Doc. 11 at 25.   The Commissioner argues that substantial evidence supports the ALJ's disability determination and that the ALJ did not err when he decided the case on this record.   Doc. 12.   The Commissioner argues that the record does not contain Plaintiff's IQ score and that there is no record evidence that would require a remand for testing; that the record does not indicate Plaintiff had any mental impairment either before or after the age of 22; that Plaintiff had income for several years (2003 through 2008) that would qualify as SGA; that Plaintiff pursued past relevant work as a motel maid; and that the record does not indicate Plaintiff attended special education classes or that she quit school after the eighth grade because of learning difficulties.   Doc. 12 at 6-7.

The ALJ's factual recitation is detailed and Plaintiff has not alleged or shown that the ALJ committed any fact-finding errors, aside from allegedly breaching his duty to fully develop the record.   Medical and other evidence considered by the ALJ is set forth in the ALJ's decision at pages 15 through 22 and is incorporated herein.   R. 15-22. Plaintiff's hearing testimony is summarized by the ALJ in this decision and is also incorporated herein.   R. 19.   After summarizing the record evidence as part of his RFC determination, the ALJ concludes:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
>
> First, the undersigned notes that the overall evidence of record is rather benign. Although the claimant has alleged that her impairments are debilitating, based upon the alleged onset date of April 2009, the evidence is sparse as to her

treatment from that date to the end of 2009 except for one ER visit and one visit for an eye exam.   The evidence reveals no treatment at all in 2010 and the first half of 2011.   Moreover, she did not begin to treat with a PCP until around June 2011 when she began to treat with GP Med Spec IM Smp (UF Shands) for her general health care needs).   Regardless, the diagnostic testing has revealed only some degenerative changes of the lumbar spine as well as the right knee and hip.   The evidence also shows that she has some issues with asthma although not rising the level of severity as to meet any listing under 3.00.   Second, the undersigned notes that the claimant's work history has rather low earnings (she has not earned over $10,000), which has been considered and could suggest some motivation issues. Third, the claimant has described rather wide range of activities of daily living that is compatible with competitive work.   For example, she is able to do some housework, reading shopping and social activities as well as use public transportation.   Fourth, the claimant's overall treatment has been rather conservative.   She has not been seen by any specialists for her asthma, hypertension, diabetes or musculoskeletal issues.   The bulk of her care has been given by a PCP in the form of medication management.   Moreover, she has not been referred for any injections or surgical evaluation (particularly related to her back, hip and knee issues).   Moreover, the bulk of her physical exam findings have been rather benign.   Lastly, although the claimant has alleged that her impairments such as her blood sugar, blood pressure, asthma and pain have not been well controlled, the evidence shows that overall she is had good moderate response to treatment and medications when compliant (see Exhibit 11 F). Although she alleged that she was medically compliant, the claimant admittedly has not been eating well (eating candy, drinking soda), not taking her medications (for hypertension or her insulin as directed) nor has she been checking your blood pressure or blood sugars as she has been advised to do so in the past.   The undersigned finds that the claimant's assertions are far in excess of the medical evidence of record and other credible evidence of record.

As for the opinion evidence, the undersigned notes that there is no opinion from any State Agency physician (only single decision makers) regarding any physical limitations.   Moreover, there is no opinion from any of the claimant's treating providers regarding any functional limitations or opinions regarding disability.   As for the opinion of the consultative examiner, Dr. Chodosh (Exhibit 5F), the undersigned gives great weight to this opinion to the extent that the claimant could do light exertional work given his [sic] musculoskeletal issues (back, knees, hips). As for his [sic] limitations of standing/walking and sitting to an occasional basis, the undersigned finds that this is generally supported given his [sic] disorders of the hips and knees and has accounted for this by providing the claimant a sit/stand option.   Given her arthritis and musculoskeletal issues, as for her postural motions, she is appropriately precluded to no squatting or kneeling and no climbing of ladders and avoidance of unprotected heights as well as the operation of moving, hazardous machinery.   Moreover, the undersigned finds that the

evidence supports that she is appropriately further limited to all other occasional postural motions including bending, crouching, stooping or crawling.   Given some issues of arthritis, the claimant also needs to avoid the push/pull of arm control and needs to avoid the operation of foot controls.   Lastly, given the claimant's asthma, she should avoid concentrated exposure to dusts, fumes or gases (or her asthma has been controlled fairly well when she is taking her medications and using nebulizer).

In sum, the above [RFC] assessment is supported by the credible evidence of record for the reasons discussed above.

R. 19-21.

As noted above, the ALJ considered Dr. Chodosh's May 26, 2011, consultative examination reports.   R. 17, 20; *see* R. 384-402 (Exhibit 5F), 403-08 (Exhibit 6F). Dr. Chodosh provided a "History of present problems" and stated in part that Plaintiff was "single, lives with a friend, completed the ninth grade, and is literate."   R. 396.   Under "General appearance," Dr. Chodosh stated: "Obese but otherwise healthy appearing woman of small to medium build and relatively short stature.   She is fully oriented, has normal speech pattern, appropriate thought content, and normal affect.   She is cooperative."   R. 396.   Although Dr. Chodosh performed a physical examination of Plaintiff, there is no mention of any adverse mental status findings. R. 394-402.[4]

After determining that Plaintiff has not engaged in SGA since April 15, 2009, the ALJ found that Plaintiff has several severe impairments.   R. 15-16.   No mental

---

[4]   Plaintiff was admitted to the emergency department at Shands in February 2012.   R. 420.   A psychological assessment stated: "Appropriate for age; Calm; Well appearing; well groomed; Patient cooperative and behavior appropriate for situation."   R. 423.   Plaintiff also has "a normal mood and affect."   R. 425; *see* R. 444, 448 (Mar. 16, 2012, ED admission).

impairments were discussed. *Id.* The ALJ discussed the severity of these impairments in light of several consultative examinations, medical evidence, and Plaintiff's testimony when determining Plaintiff's RFC. R. 16-21. No mental impairments are noted. *Id.* The ALJ noted that Plaintiff had "a limited education," R. 21, having previously noted her eighth grade education, lack of a GED, and that she testified having "problems making change." R. 19.

Plaintiff did not claim to be mentally impaired during the evidentiary hearing before the ALJ and Plaintiff was represented by an attorney. R. 30-49. During her closing argument, Plaintiff's counsel argued that the ALJ should consider the combined effect of Plaintiff's impairments, including her "severe diabetes," hypertension and coronary artery disease prevention, "severe asthma," Plaintiff's severe pain in her hips, knees, and back, and Plaintiff's need for breaks. R. 48-49. There is no mention during the hearing that Plaintiff had any mental impairment that met or equaled a listing or that Plaintiff should be referred for an IQ assessment. R. 30-49. It was not until after the ALJ entered his decision that Plaintiff's counsel suggested, in part, to the Appeals Council that the ALJ erred "in finding that the Claimant/Wage Earner's illiteracy was not supported by substantial evidence"; that "[t]he ALJ erred in failing to consider the effect of the claimant's illiteracy on her ability to perform other work"; and that "[t]he ALJ erred in finding that the Claimant/Wage earner was capable of performing routine unskilled work." R. 279-80. Further, Plaintiff's counsel argued that "[t]he ALJ neglected his duty to elicit testimony from family members" and thereby erred in his duty to develop the record. R. 283.

Counsel did not argue that the ALJ should have requested an evaluation of Plaintiff's IQ. R. 277-84.

2.

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the criteria of any listing, noting in part that none were identified by Plaintiff or her counsel.   R. 16.   The ALJ did not mention the criteria of Listing 12.05C (Intellectual disability).[5]   (Listing 12.05A, B, and D, are not applicable here as they are not mentioned by Plaintiff.   *See* doc. 11 at 25.)

Listing 12.05C provides in relevant part:

12.05 Mental retardation [Intellectual disability]: Mental retardation [Intellectual disability] refers to significantly subaverage general intelligence functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

* * * *

C.   A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

20 C.F.R., Pt. 404, Subpt. P, App. 1, Listing 12.05C.

Generally, the claimant meets the criteria for presumptive disability under section 12.05(b) when the claimant presents a valid IQ score of 59 or less, or under section 12.05(c) when the claimant presents a valid IQ score of 60 through 70 inclusive, and when the claimant presents evidence of an additional mental or physical

---

[5]   The Commissioner notes that effective September 3, 2013, the terminology "mental retardation" was replaced In Listing 12.05 by "intellectual disability."   *See* 78 Fed. Reg. 46,499 (Aug. 1, 2013).   Doc. 12 at 5 n.2.   Listing 12.05C quoted below has the new language in brackets.

impairment significantly affecting claimant's ability to work.   *See Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir.1992) (a valid IQ score need not be conclusive of mental retardation, where the IQ score is inconsistent with other evidence in the record concerning the claimant's daily activities and behavior).

Crayton v. Callahan, 120 F.3d 1217, 1219-20 (11th Cir. 1997); *see* Henry v. Barnhart, 156 F. App'x 171, 173 (11th Cir. 2005) (unpublished) (citing Popp v. Heckler, 779 F.2d 1497, 1499-1500 (11th Cir. 1986)).

The claimant has the burden of proving that her impairments meet or equal a listed impairment by presentation of specific evidence of medical signs, symptoms, or laboratory test results meeting all of the specified medical criteria.   Sullivan v. Zebley, 493 U.S. 521, 530 (1990).   "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria.   An impairment that manifest only some of those criteria, no matter how severely, does not qualify."   *Id*.

"If a claimant has been able to adapt in functioning after age 22, it is permissible to find that Listing 12.05C has not been met."   Monroe v. Astrue, 726 F. Supp. 2d 1349, 1355 (N.D. Fla. 2010).   The court in Monroe explains:

> In an unpublished case, the Eleventh Circuit has recast the rule of *Popp*: to meet Listing 12.05(C), "a claimant must at least (1) have significantly subaverage general intellectual functioning; (2) have [current] deficits in adaptive functioning; and (3) have manifested deficits in adaptive behavior before age 22."   *Pettus v. Astrue*, 226 Fed. Appx. 946, 948 (11th Cir. Apr. 5, 2007) (not selected for publication in the Federal Reporter, No. 06-15667).   However, it has been pointed out that: "Listing 12.05 does not require *significant* deficits in adaptive functioning; it only requires that there be 'deficits in adaptive functioning initially manifested during the developmental period; i.e., . . . before age 22.'   20 C.F.R., Part 404, Subpart P, Appendix 1 § 12.05."   *Cammon v. Astrue*, 2009 U.S. Dist. LEXIS 92293, 2009 WL 3245458, *11 (N.D. Ga. Oct. 5, 2009) (No. CIV. A. 3:08-CV-0131-JFK).

*Id.* at 1355 n.5.

The burden is on the claimant to prove that she is disabled.   *See* <u>Bell v. Bowen</u>, 796 F.2d 1350, 1352 (11th Cir. 1986) (citing 20 C.F.R. §§ 404.1525, 404.1526).   The third-step of the five-step process requires the ALJ to compare the claimant's medical evidence to a list of impairments "presumed severe enough to preclude any gainful work." <u>Sullivan v. Zebley</u>, 493 U.S. at 525 (citation omitted).   If the medical evidence meets or equals the listing, then a finding of disability is made.   *Id*.   The claimant's impairments must meet or equal *all* of the specified medical criteria in a particular listing for the claimant to be found disabled at step three of the sequential evaluation process.   *Id*. at 530-31.

The Commissioner agrees that "Plaintiff has 'another physical or mental impairment' (Tr. 15)," in light of the ALJ's finding at step three that Plaintiff has several severe physical impairments, R. 15, satisfying one element of Listing 12.05C, but that Plaintiff does not meet the other listing criteria, including that she does not have an IQ score of 60 through 70.   Doc. 12 at 5.   The absence of a qualifying score means that Plaintiff does not meet Listing 12.05C.   <u>Sullivan v. Zebley</u>, 493 U.S. at 530.   In addition, Plaintiff did not meet or equal this listing because she does not have "a diagnosis included in the" listing.   *See* <u>Wilson v. Barnhart</u>, 284 F.3d at 1224.

The record indicates that Plaintiff has not been diagnosed with mental retardation or intellectual disability nor was this issue raised before the ALJ.   Plaintiff's counsel did argue before the Appeals Council that Plaintiff's ability to do "other work" was compromised by her alleged "illiteracy."   R. 279-80.   This allegation, among others, was considered by the Appeals Council and (implicitly) rejected. R. 1-2.

There is no evidence in the record that Plaintiff had significantly subaverage general intellectual functioning with deficits in adaptive functioning prior to age twenty-two.   There is no medical evidence indicating Plaintiff had any mental impairment either before or after age twenty-two.

Nevertheless, Plaintiff argues that she never earned income at the level of SGA, dropped out of school after the eighth grade, had trouble counting change, and never had a driver license.[6]   R. 32, 36, 38; doc. 11 at 23.   The record reflects that Plaintiff represented she worked a forty-hour week as a motel maid (housekeeping) between 2003 and April 2009, earning six dollars an hour or $960 a month.[7]   R. 225.   That income was sufficient to qualify as SGA for every year between 2003 and 2008 and Plaintiff has not challenged the ALJ's finding that her job as a motel maid was past relevant work.   R. 21; *see* Official Social Security Website at

---

[6]   Past relevant work is defined, in part, as work performed at the level of substantial gainful activity.  20 C.F.R. § 404.1560(b)(1).   "Substantial gainful activity means work that-(a) Involves doing significant and productive physical or mental duties; and (b) Is done (or intended) for pay or profit."   20 C.F.R. § 404.1510.   "Substantial gainful activity is work activity that is both substantial and gainful."   20 C.F.R. § 404.1572.   "Substantial work activity is work activity that involves doing significant physical or mental activities.   Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before."   20 C.F.R. § 404.1572(a).   "Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized."   20 C.F.R. § 404.1572(b).   "Generally, we do not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity." 20 C.F.R. § 404.1572(c).

[7]   Plaintiff earnings records indicate that between 2003 and 2009 Plaintiff's earnings ranged from $552.60 in 2003 to $3,172.66 in 2009 with a top earning in 2006 of $9,857.09.   R. 209-10, 216, 222.   (Plaintiff testified she last worked in 2008. R. 33).

http://www.socialsecurity.gov/oact/cola/sga.html (monthly SGA amounts by disability type).   The monthly SGA amount for non-blind persons for 2008 was $940 and $980 in 2009.   *Id.*

        As for Plaintiff's educational history, there is no evidence that she attended special education classes.   R. 225 (Disability Report-Adult: Plaintiff did not attend special education classes); *see* R. 30, 268-72 (School Board of Alachua County-adult education records).   Although Plaintiff dropped out of school after the eighth grade and reported having trouble counting change, there is no evidence that she quit school because of learning difficulties.   In addition, Plaintiff testified that she read the Bible and sometimes read other books and could write in paragraph form.   R. 35, 38; *see, e.g.*, Hayes v. Comm'r of Soc. Sec., 357 F. App'x 672, 676-77 (6th Cir. 2009) (poor academic performance alone does not warrant a finding of onset of subaverage intellectual functioning before age twenty-two).   Similarly, although Plaintiff has never had a driver license, she gave no indication that this was a result of a mental impairment.   Also, Plaintiff regularly uses public transportation.   R. 36.   As the record stands, Plaintiff does not meet the requirements of Listing 12.05C, a point implicitly acknowleged by Plaintiff because she does not have a qualifying IQ score.

        Notwithstanding, Plaintiff argues that the case should be remanded in order to evaluate Plaintiff's IQ for the purpose of potentially demonstrating that her alleged mental impairments meet or equal Listing 12.05C, although she does not offer any evidence, independent from the record, *see supra* at 7 regarding her reported inability to make change, etc., that she has mental retardation (or an intellectual disability) within the

meaning of Listing 12.05, an essential requirement of this listing.   No medical source suggested that Plaintiff functioned in the mentally retarded range of intellectual functioning or even in the borderline range.   *See* 20 C.F.R. § 404.1513(a).   In fact, Plaintiff did not cite to any mental health records supporting her claim, and even though Plaintiff was represented by counsel before the ALJ, Plaintiff did not allege that mental retardation was one of her impairments or that she had any mental limitations.   *See* doc. 11; *see also* R. 30-39 (hearing transcript), 224 (no mental conditions, including emotional or learning problems, listed that limited her ability to work).

Plaintiff bears the burden of proving that she is disabled, and consequently, is responsible for producing evidence in support of her claim.   *See* 20 C.F.R. § 404.1512(a); Moore v. Barnhart, 405 F.3d at 1211.   On the other hand, an ALJ has a clear duty to fully and fairly develop the administrative record.   Brown v. Shalala, 44 F.3d 931, 934 (11th Cir. 1995); Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003); 20 C.F.R. § 404.1512(d).   "Under the social security regulations, the ALJ may order additional consultative examinations if the medical evidence submitted by the claimant does not provide enough information about an impairment to determine whether the claimant is disabled."   Salazar v. Comm'r of Soc. Sec., 372 F. App'x 64, 67 (11th Cir. 2010) (unpublished) (citing 20 C.F.R. § 416.917).   The ALJ "is not required to order additional examinations if the evidence in the record is sufficient to allow him to make an informed decision."   *Id.*   (citing Ingram v. Comm'r of Soc. Sec., 496 F.3d 1253, 1269 (11th Cir. 2007)).   "The court should be guided by whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'"   Graham v. Apfel, 129 F.3d 1420,

1423 (11th Cir. 1997) (citing <u>Brown</u>, 44 F.3d at 934-35).   Plaintiff did not prove that a

consultative examination (to evaluate Plaintiff's IQ or obtain other information related to

Plaintiff's mental status) was necessary based on the record evidence and she also did

not prove that she was clearly prejudiced regarding the development of the record.

There are not the kinds of gaps in the evidence necessary to demonstrate prejudice to

Plaintiff.   <u>Graham v. Apfel</u>, 129 F.3d at 1423.   Substantial evidence supports the ALJ's

findings and his conclusion that Plaintiff was not disabled.


## V.   Conclusion

Considering the record as a whole, the findings of the ALJ are based upon

substantial evidence in the record and the ALJ correctly followed the law.   Accordingly,

pursuant to 42 U.S.C § 405(g), it is respectfully recommended that the decision of the

Commissioner to deny Plaintiff's applications for Social Security benefits should be

**AFFIRMED.**

**IN CHAMBERS** at Tallahassee, Florida, on October 9, 2014.


**s/   Charles A. Stampelos_____**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**


## <u>NOTICE TO THE PARTIES</u>

**A party may file specific, written objections to the proposed findings and**
**recommendations within fourteen (14) days after being served with a copy of this**
**report and recommendation.   A party may respond to another party's objections**
**within fourteen (14) days after being served with a copy thereof.   Failure to file**
**specific objections limits the scope of review of proposed factual findings and**
**recommendations.**